IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Criminal Action No.: 6:06-cr-00992-JMC-1 |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Leroy Augustus Lane, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on Defendant Leroy Augustus Lane's Motion for Compassionate Release filed on June 8, 2020. (ECF No. 238.) After reviewing the Motion, pertinent law, and the record, the court **DENIES** Defendant's Motion for Compassionate Release (ECF No. 238) without prejudice.

### I.   FACTUAL AND PROCEDURAL HISTORY

On September 14, 2006, the Grand Jury indicted Defendant for taking, "by force, violence, and intimidation, [] from the person and presence of employees of the First Citizen Bank, . . . money belonging to and in the care, custody, control, management, and possession of [the] financial institution," in violation of 18 U.S.C. § 2113(a) (bank robbery). (ECF No. 19 at 1.) On May 1, 2007, a jury found Defendant guilty of this charge. (ECF No. 58.) On August 13, 2007, Defendant was sentenced to life imprisonment. (ECF No. 71.) On April 21, 2008, the United States Court of Appeals for the Fourth Circuit affirmed Defendant's sentence. (ECF No. 90.) On November 10, 2010, upon the joint motion by the parties, the Fourth Circuit vacated Defendant's sentence, and remanded the case to the district court for re-sentencing in light of the Fourth Circuit's decision in *United States v. Thompson*, 554 F.3d 450 (4th Cir. 2009). (ECF No. 129.) On January 4, 2011, the District Court entered an Amended Judgment, sentencing Defendant to a term

1

of two hundred forty (240) months of imprisonment and three (3) years of supervised release. (ECF No. 136.) Defendant appealed his final judgment. (ECF No. 138.)

On appeal, the Fourth Circuit reversed the District Court's decision and remanded the case for re-sentencing. (ECF No. 161.) On August 16, 2012, Defendant was re-sentenced to two hundred forty (240) months of imprisonment and three (3) years of supervised release. (ECF No. 170.) Further attempts by Defendant to lower his sentence through post-conviction filings have been unsuccessful. (ECF Nos. 173, 184, 186, 222, 233.)

Defendant is currently incarcerated at Edgefield Federal Correctional Institution ("FCI"). His current release date is September 9, 2023. During Defendant's imprisonment, on March 11, 2020, the World Health Organization characterized COVID-19, also known as the new coronavirus, as a pandemic. Two days later, on March 13, 2020, the President of the United States officially declared a national emergency due to the virus. On June 8, 2020, Defendant filed this *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on the COVID-19 pandemic. (ECF No. 238.)

In his Motion, Defendant requests that the court to reduce his sentence by thirty-eight (38) months, so that he will be immediately placed on home confinement or supervised release due to the seriousness of COVID-19. (ECF No. 238 at 2.) Defendant alleges that he is sixty-three (63) years old with high blood pressure, not a member of any gangs, and has been well-behaved in the fourteen (14) years he has been incarcerated. (*Id.* at 9.) Therefore, Defendant believes that he is not a threat to the public or his community if released. (*Id.*) Defendant claims that he faces serious health risks if he were to remain incarcerated. (*Id.* at 4.)

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(c), a court may not modify a term of imprisonment once it

has been imposed except (1) upon the motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant under limited circumstances, after considering extraordinary and compelling reasons in relation to policy statements issued by the Sentencing Commission; (2) upon motion of the Government pursuant to Rule 35 of the Federal Rules of Criminal Procedure; or (3) when a defendant has been sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission. In this case, to warrant a sentence reduction, Defendant must present "extraordinary and compelling reasons" for the modification of his sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

### III.     ANALYSIS

Defendant seeks modification of his sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i). This provision allows defendants, not only the Director of the BOP, to file a motion to reduce sentence after "fully exhaust[ing] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of [thirty] (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . . after considering the applicable factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A)(i).

Courts have interpreted the exhaustion requirement differently. Some courts hold that "the lapse of thirty (30) days from the receipt of such a request by the warden" means the passage of thirty (30) days alone would satisfy the exhaustion requirement. *United States v. Martin*, No. 3:16-CR-70-DPJ-LRA, 2020 WL 3065302, at *2 (S.D. Miss. June 9, 2020) (citing *United States v. Ng Lap Seng*, No. 15-CR-706-VSB, 2020 WL 2301202, at *5 (S.D.N.Y. May 8, 2020)). Other courts have read the "lapse" language as requiring the passage of 30 days without the BOP acting on the request. *Id.*

In the instant case, Defendant filed a request for reduction in sentence with the warden of

FCI on March 31, 2020, which was denied on May 19, 2020, fifty (50) days after Defendant's filing of the request. (ECF 238-1.) Because Defendant waited for more than thirty (30) days without the BOP acting on his request, either interpretation of the "lapse of thirty (30) days" language would suggest Defendant has met the exhaustion requirement. Therefore, the court would consider the merits of Defendant's Motion.

A court may only reduce the defendant's term of imprisonment if the court (1) finds "extraordinary and compelling reasons warrant such a reduction;" (2) considers "the factors set forth in [18 U.S.C.] § 3553(a);" and (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The application notes of U.S.S.G. § 1B1.13 set out conditions and characteristics that qualify as extraordinary and compelling reasons, including

> (A) Medical Condition of the Defendant.
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> (B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13, cmt. n.1(A), (B).

Defendant alleges hypertension as a serious health risk that makes him vulnerable to COVID-19, amounting to an extraordinary and compelling reason for a sentence reduction. (ECF

4

No. 238 at 3.) However, Defendant does not provide medical records, or information, that his hypertension substantially diminishes his ability to provide self-care within the environment of a correctional facility. The Presentencing Investigation Report also indicates that Defendant was not under the care of a physician for this medication condition. (ECF No. 63 at 9 ¶ 38.) Moreover, high blood pressure is not certain to place an individual at an increased risk of COVID-19. Center for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 29, 2020).

Furthermore, Defendant is not suffering from a terminal illness with an end of life trajectory, or a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility. *United States v. Manuel*, No. CR 3:13-479-CMC, 2020 WL 1466000, at 2 (D.S.C. Mar. 26, 2020). As the Government points out in its Response in Opposition, the COVID-19 pandemic does not fall into the above-mentioned categories of medical conditions set forth in U.S.S.G. § 1B1.13, cmt. n.1(A). (ECF No. 250 at 9.) It is not a specific medical condition afflicting an individual inmate, but a generalized threat to the entire population. Federal circuit and district courts have also ruled against compassionate release based on COVID-19. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Eberhart*, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

In Defendant's Response in Support of the Motion, Defendant argues that the BOP lacks the capacity to prevent the a COVID-19 spread or provide needed medical care. (ECF No. 248 at 19.) However, Defendant fails to acknowledge the various efforts the BOP has already made to respond to COVID-19. (ECF Nos. 248 at 19–24, 250 at 2–5.) Additionally, in the face of COVID-19 pandemic, the BOP needs to consider multiple concerns, including the importance of inmate health, its charge to incarcerate sentenced criminals to protect the public, as well as the effects of a mass release on the safety and health of both the inmate population and the citizenry.

### IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** Defendant Leroy Augustus Lane's Motion for Compassionate Release (ECF No. 238) without prejudice.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 30, 2020
Columbia, South Carolina